1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 JAY G. KIMPEL,                                Civil No.    08cv1734 LAB (JMA)

12
                                Plaintiff,
13                                             **ORDER:**

14                                             **(1) GRANTING DEFENDANTS'
                                               MOTION FOR SUMMARY
15        vs.                                  JUDGMENT PURSUANT TO
                                               FED.R.CIV.P. 56(c)
16                                             [ECF No. 123]; and**

17 DR. R. WALKER;                              **(2) DENYING MOTION TO
   P. JAYASUNDARA, N.P.,                       APPOINT EXPERT WITNESSES
18                                             AND MOTION TO USE ALL
                                               MEDICAL AND MENTAL
19                                Defendants.   RECORDS IN TRIAL [ECF Nos. 119,
                                               121] AS MOOT**

20

21

22                                      **I.**

23                         **PROCEDURAL BACKGROUND**

24        Jay Kimpel   ("Plaintiff"), a former state prisoner, proceeding pro se and *in forma*

25 *pauperis*, has filed this civil rights action pursuant to 42 U.S.C. § 1983.  Defendants have filed

26 a filed a Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [ECF No. 123].   The

27 Court notified Plaintiff of the requirements for opposing summary judgment pursuant to

28 *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th

1  Cir. 1998) (en banc) [ECF No. 125].  Plaintiff has not filed an Opposition.  On April 9, 2013,

2  Plaintiff filed a notice of change of address and he was re-served with Defendants moving

3  papers and the Court's *Klingele/Rand* notice. [ECF Nos. 126, 127.]  The Court has determined

4  that Defendants' Motion is suitable for disposition upon the papers without oral argument and

5  that no Report and Recommendation from Magistrate Judge Jan M. Adler is necessary.  *See*

6  S.D. CAL. CIVLR 7.1(d)(1), 72.3(e).

## II.

### PLAINTIFF'S FACTUAL BACKGROUND[1]

9  On December 15, 2007, while incarcerated at the Richard J. Donovan Correctional

10  Facility ("RJDCF") Plaintiff sought medical treatment for "unbearable pain."  (*See* SAC at 1,

11  3.)  Plaintiff claims that he was examined by Defendants Walker and Jayasundara who refused

12  to renew pain medication that had been prescribed for him by a different doctor.  (*Id.*)  Plaintiff

13  claims that Defendants told him he was "faking it" and denied him any treatment.  (*Id.*)

14  Several months later, Plaintiff was being examined by Dr. Hunt[2] on June 24, 2008.  (*Id.*

15  at 4.)  Plaintiff claims that Defendant Jayasundara interrupted this examination and told Dr.

16  Hunt that Plaintiff was a "big faker."  (*Id.*)   On July 7, 2008, Plaintiff alleges that Defendant

17  Jayasundara refused to provide a wrist brace for Plaintiff that was ordered by Dr. Hunt.  (*Id.* at

18  5.)

## III.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A.    Standard of Review

23  Summary judgment is properly granted when "there is no genuine issue as to any

24  material fact and ... the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P.

25  56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing

---

[1]  These allegations are taken from Plaintiff's Second Amended Complaint ("SAC"). [ECF No. 41.]

[2]  Dr. Hunt is not a named Defendant in this matter.

1    sufficient to establish the existence of an element essential to that party's case, and on which

2    that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

3    (1986).   The court shall consider all admissible affidavits and supplemental documents

4    submitted on a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*,

5    784 F.2d 1018, 1020 (9th Cir. 1986).

6          The moving party has the initial burden of demonstrating that summary judgment is

7    proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).   However, to avoid summary

8    judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794

9    F.2d 457, 459 (9th Cir. 1986).   Rather, he must present "specific facts showing there is a

10   genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The Court

11   may not weigh evidence or make credibility determinations on a motion for summary judgment.

12   Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the

13   light most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S.

14   654, 655 (1962).   The nonmovant's evidence need only be such that a "fair minded jury could

15   return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255.   However,

16   in determining whether the nonmovant has met his burden, the Court must consider the

17   evidentiary burden imposed upon him by the applicable substantive law. *Id.*

18          A verified complaint or motion may be used as an opposing affidavit under

19   FED.R.CIV.P. 56 to the extent it is based on personal knowledge and sets forth specific facts

20   admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam)

21   (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion).   To

22   "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true

23   "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th

24   Cir. 1995).   In this matter, Plaintiff's Second Amended Complaint is not verified.

25   **B.     42 U.S.C. § 1983**

26          Section 1983 authorizes a "suit in equity, or other proper proceeding for redress" against

27   any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the

28

1  United States ... to the deprivation of any rights, privileges, or immunities secured by the

2  Constitution." *Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct. 2117, 2122 (2004).

3  **C.    Eighth Amendment Medical Treatment Claims**

4  Defendants argue that no genuine issue of material fact exists to show that either

5  Defendant acted with deliberate indifference required to support an Eighth Amendment

6  violation.

7  **1.    Standard of Review**

8  The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton

9  infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428

10  U.S. 153, 173 (1976)).  The Eighth Amendment's cruel and unusual punishments clause is

11  violated when prison officials are deliberately indifferent to a prisoner's serious medical needs.

12  *Estelle*, 429 U.S. at 105.  "Medical" needs include a prisoner's "physical, dental, and mental

13  health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

14  To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner

15  must point to evidence in the record from which a trier of fact might reasonably conclude that

16  Defendants' medical treatment placed Plaintiff at risk of "objectively, sufficiently serious" harm

17  and that Defendants  had a "sufficiently culpable state of mind" when they either provided or

18  denied him medical care.  *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal

19  quotations omitted).  Thus, there is both an objective and a subjective component to an

20  actionable Eighth Amendment violation.  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.

21  2002);.

22  Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy

23  the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*,  217 F.3d 726, 731

24  (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges

25  facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that]

26  condition could result in further significant injury or the unnecessary and wanton infliction of

27  pain." *Clement*, 298 F.3d at 904 (quotations omitted).

28

However, the subjective component requires the prisoner to also allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation.  *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  And, while deliberate indifference can be manifested if a doctor or prison guard intentionally denies or delays access to medical care or otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104-05, the delay must also lead to further injury or be somehow harmful.  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (noting that harm caused by delay need not necessarily be "substantial"), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

## 2.    Application to Plaintiff's Allegations

In their Motion, Defendants do not argue that Plaintiff has failed to allege, or prove, that he had a serious medical need.  Instead, Defendants argue that there is no triable issue as to the subjective component of an Eighth Amendment inadequate medical care claim against Defendants.  *See Frost*, 152 F.3d at 1128; *Farmer*, 511 U.S. at 837.   In order to justify trial, Plaintiff must point to evidence in the record to show that Defendants were "deliberately indifferent" to his serious medical needs, *i.e*, that they knew, yet consciously disregarded his

1  pain or the need to provide him constitutionally adequate care.  *See McGuckin,* 974 F.2d

2  at1060.  This "subjective approach" focuses only "on what a defendant's mental attitude

3  actually was." *Farmer*, 511 U.S. at 839.

4      Defendant Walker has provided a declaration, which includes portions of Plaintiff's

5  medical records while incarcerated, to show that Plaintiff was provided with adequate medical

6  care for his serious medical needs.  (*See* Declaration of Robert Walker, M.D., ECF No. 123-2.)

7  In this declaration, Defendant Walker states that he examined Plaintiff on three occasions,

8  January 16, 2008, January 28, 2008 and March 26, 2008.  (*Id.* at ¶ 6.)  On January 16, 2008,

9  Defendant Walker examined Plaintiff for his complaint of "bilateral elbow pain and right

10  shoulder pain." (*Id.* at ¶ 7.)  It was Dr. Walker's opinion, after examining Plaintiff, that these

11  conditions were "benign" but he continued Plaintiff's prescription for Motrin and Effexor.  (*Id*)

12  In addition, Dr. Walker ordered an x-ray of Plaintiff's back that was "negative" and he ordered

13  physical therapy, along with additional x-rays of Plaintiff's right shoulder and elbows.  (*Id.*, Ex.

14  A, Outpatient Interdisciplinary Progress Notes dated January 16, 2008.)

15      On January 28, 2008, Defendant Walker again examined Plaintiff "regarding continued

16  complaint of his right shoulder and low back pain."  (*Id.* at ¶ 8.)  The x-ray of Plaintiff's

17  shoulder and elbow indicated "mild degenerative joint disease."  (*Id.*)  Defendant Walker

18  ordered an MRI and continued Plaintiff with the same pain medications.  (*Id.*)  The final time

19  Plaintiff was examined by Defendant Walker was on March 26, 2008 for complaints of "fourth

20  trigger finger condition and right shoulder pain." (*Id.* at ¶ 10.)  Defendant Walker noted that

21  an MRI and orthopedic referral remained pending and continued Plaintiff's pain medications.

22  (*Id.*)  On May 19, 2008, Defendant Walker prescribed "Naproxen, an anti-inflammatory and

23  pain reliever" for Plaintiff based in a "report from plaintiff made to me by a registered nurse."

24  (*Id.* at ¶ 11, Ex. C. Outpatient Interdisciplinary Progress Notes, dated March 26, 2008.)

25      Plaintiff's sole claim against Defendant Walker is his claim that on December 15, 2007,

26  Defendant Walker refused to renew his medication and found it "funny" to deny Plaintiff

27  treatment.  (*See* SAC at 3.)  First, there are no documents attached to Plaintiff's Second

28  Amended Complaint or to Defendants' Motion that shows any record of Defendant Walker

examining Plaintiff on December 15, 2007.  However, the records provided by both Plaintiff and Defendant Walker do demonstrate that Defendant Walker examined Plaintiff on three occasions and provided him with pain medication for his medical conditions.

The records supplied by the parties in this action do show that Plaintiff was examined by Defendant Jayasundara, a nurse practitioner, on December 28, 2007. (*See* Declaration of P. Jayasundara, ¶ 3, Ex. E, Interdisciplinary Progress Notes dated December 28, 2007) Neither the documents attached to Plaintiff's Second Amended Complaint nor the documents attached in support of Defendants' Motion show any evidence that Plaintiff was examined by any RJDCF prison medical official on December 15, 2007.  During this examination on December 28, 2007, Defendant Jayasundara declares that he "examined [Plaintiff] in connection with right leg pain and lower back pain; Hep C; asthma; and abdominal pain." (*Id.* at ¶ 3.)  There was no pain medication discontinued at this examination.  (*Id.*)  On February 22, 2008, Defendant Jayasundara examined Plaintiff again and ordered an orthopedic consultation and prescribed a stronger anti-inflammatory medication in replacement of the prescription for Motrin. (*Id.* at ¶ 4.)  Again, no other pain medication was discontinued. (*Id.*)  Finally, Plaintiff was examined by Defendant Jayasundara on July 16, 2008 regarding complaints of shoulder pain and Jayasundara ordered "that his current medications be continued as his chart indicates and that he be prescribed Naproxen as well." (*Id.* at ¶ 5, Ex. G., Outpatient Interdisciplinary Progress Notes dated July 16, 2008.)

Plaintiff has not supplied any evidence or pointed to any evidence in the Court's record that would contradict Defendants' assertion that they provided him with adequate medical care. There is no evidence in the record to support Plaintiff's unsubstantiated claim that either Defendant refused to provide him with pain medication.  Plaintiff's claims that Defendant Jayasundara "refused to order a wrist brace" for Plaintiff is also completely unsubstantiated in the record.  Plaintiff provides documents with his Second Amended Complaint that suggests he was prescribed a wrist brace in 2005. (*See* SAC, Ex., Home Health Certification and Plan Care dated February 11, 2005.)  However, there is no evidence in the record that support claims

1    that either Defendant knew of Plaintiff's alleged need for a wrist brace or took any action to

2    deny Plaintiff a wrist brace.

3         Even if Plaintiff could show that these Defendants told Plaintiff that he was "faking" his

4    medical condition, the record before the Court demonstrates that Plaintiff was given medical

5    examinations, tests and provided pain medication.   Because this evidence is not contradicted

6    anywhere in the record, the Court finds no genuine issues of material fact exists as to whether

7    Defendants acted with deliberate indifference to Plaintiff's serious medical needs. *Estelle*, 429

8    U.S. at 105. Accordingly,  the Court GRANTS Defendants' Motion for Summary Judgment

9    pursuant to FED.R.CIV.P. 56.

10                                   **IV.**

11                         **CONCLUSION AND ORDER**

12        For all the reasons set forth above, the Court hereby:

13        1)     GRANTS Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P.

14   56(c) [ECF No. 123] and

15        2)     DENIES Plaintiff's Motions to Appoint Experts and to "Use all Medical and

16   Mental Records in Trial" [ECF Nos. 119, 121] as moot.

17        The Clerk of Court shall enter judgment for the Defendants and close the file.

18   **IT IS SO ORDERED.**

19

20   DATED:  July 10, 2013

21                                   *Larry A. Burns*

22                                   **HONORABLE LARRY ALAN BURNS**
                                     United States District Judge

23

24

25

26

27

28